IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                                :
MAGDA KOCOVSKA,                                 :
                                                :     Civil Action No. 07-5365 (PGS)
                    Plaintiff,                  :
                                                :
        v.                                      :
                                                :     OPINION
COMMISSIONER OF SOCIAL SECURITY,                :
                                                :
                    Defendant.                  :
                                                :
_____:

**SHERIDAN, U.S.D.J.**

This matter is before the Court on the appeal of Plaintiff Magda Kocovska from the

Commissioner of the Social Security Administration's final decision denying her application for

Disability Insurance Benefits.  The issue is whether there is substantial evidence which supports the

Administrative Law Judge's decision that Magda Kocovska (Plaintiff) was not disabled during the

period between January 16, 1999 (date of alleged onset of disability) and December 31, 2002 (date

last insured).  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Simmons v. Heckler*, 807 F. 2d 54

(3d Cir. 1986). This time period will be referred to as the Period of Disability.

I.

Plaintiff is a 60 year old woman who has resided in this country for approximately 38 years.

She currently lives in Florida with her son and daughter-in-law. (R. 226-41).  She is a high school

graduate with no specialized training. (R. 61). Her past job experience includes a clerical position

at pharmaceutical company (1997) and as a machine operator at a ribbon company (1997-1999)

where she earned approximately $11,000 per year.  For the majority of her career she worked as

quality control inspector at an electronics factory (1970 through 1995). As an inspector, she checked electronic parts to make sure the parts were manufactured correctly which required the use of a caliper and microscope. (R. 57). In addition, she boxed the parts for shipment and recorded the contents of the boxes.  The job required approximately 4 hours standing, walking, stooping and bending forward from the waist, and handling large and small objects.  She was also required to lift boxes of electronic parts that weighed up to 30 pounds. (R. 58). As noted above, she worked at that job for 25 years at which time the company closed.  According to Plaintiff, she stopped working at her last job as a machine operator because "I just couldn't do it anymore. I couldn't function. I couldn't stand on my feet.  I felt my hands weren't working anymore". (R. 56).  At the hearing, she stated that prior to 2002, she could not work because of her back, her memory and her foot problems.

 Plaintiff explained that she could not work presently because "I got back problem.  I'm so depressed."  Plaintiff related that her memory was not that good, and that she had been treated for depression since 2003 or 2004. She stopped the psychiatric treatment because she couldn't afford it.  She insisted that she could only stand for an hour, and that she was so depressed she could not sleep. Plaintiff lamented that she sometimes cried and wanted to be by herself (R. 238).

During the Period of Disability, the Plaintiff had some illness and conservative treatment; but not as intense as Plaintiff describes.  Her medical treatment is outlined below.

On February 9, 1999, Plaintiff presented with complaints of persistent back pain. (R. 147). The doctor found no tenderness, a negative straight leg raising test and a full range of motion. She was conservatively treated with non-steroidal anti-inflammatory drugs ("NSAID").

More than a year later, Plaintiff was treated for a migraine headache with spots before her eyes that had lasted 10 days.  She was prescribed Tylenol #3. (R. 147).

On May 22, 2000 Plaintiff sought emergency treatment at Hackensack University Hospital for severe abdominal pain, nausea and vomiting.  She was treated with Aciphex and released. (R. 92).  Her lab results for the most part were within normal range.  Later that summer, an abdominal ultrasound revealed a small gallstone, but was otherwise unremarkable. (R. 104).

Plaintiff had foot surgery in 2001. John Guardara, M.D. performed surgery on Plaintiff's foot for a bone spur in May 2001. The ALJ contacted Dr. Guardara  prior to the hearing about Plaintiff's condition at that time.  Dr. Guardara responded that he had not seen Plaintiff since July 2001, and was unable to  opine as to her ability to do work related activities at that time. (R. 170-175).

On March 12, 2003, Plaintiff treated with Waiel Abdelwahab, M.D. on several occasions. Progress notes indicate that Plaintiff complained of pain in both legs, low back pain for one year, left arm pain and that she had high cholesterol.  She also suffered from heartburn and was diagnosed with reflux esophagitis and was to return in two months for a follow up. (R. 114).  Lab reports were in the normal range except for high cholesterol. (R. 115, 125-26).

The only diagnostic test with regard to Plaintiff's back pain is an April 10, 2003  MRI of the lumbar spine.  The impression was 1) changes of diffuse degenerative disc disease; 2) small left paracentral and lateral recess protrusion T12 - L1, without significant neural compromise; 3) diffuse broad based disc bulge at L3 -4 with superimposed changes of degenerative facet osteoarthropathy contributing to mild stenosis; 4) additional diffuse disc bulge at L4-5;  and 5) asymmetric disc bulge at L1-2, with mild flattening of ventral thecal sac, with no significant neural foraminal compromise seen.

A year later (February 9, 2004), an ultrasound diagnosed a pelvic/ovarian cyst. (R. 156).  It appears that this went untreated.

On February 19, 2005, a routine physical examination by Dr. Ehab Ibraham was unremarkable, except for unspecified chest pain. (R. 134).  Shortly thereafter, (March 11, 2005) a routine physical examination proved unremarkable.  She denied having any problems or pain. Her general appearance was alert, well developed, well nourished and well groomed. She reported no anxiety or depression. (R. 130).  She was diagnosed with elevated cholesterol; other malaise and fatigue, and esophageal reflux.   An echocardiogram at that time revealed mild/trace mitral regurgitation, but was otherwise unremarkable. (R. 105).

Plaintiff was treated for depression by Dr. Kosovich on August 10, 2005, and she had three visits within the next month. (R. 159-164).  She was found to be oriented, with some suicidal ideation.  Her mood was sad and her affect was depressed.  She reported feelings of worthlessness, helplessness and hopelessness.  She had insomnia, was restless and heard voices calling her name. She looked older than her stated age and her behavior and speech were slow.  Her concentration was poor and she was forgetful of recent events.  Her judgment was severely impaired and she felt no hope for her life.  Her ability to respond appropriately to changes in work setting was noted as being limited as she is very self conscious.  She claimed she could not do anything.  She was given psychotherapy with very little change, and was prescribed medication.  Her prognosis was very poor, although she was able to manage her own benefits. (R. 159-164).

A Psychiatric Review Technique dated December 19, 2005 and signed by M. Apacible, M.D. summary found insufficient evidence to quantify Plaintiff's medical disposition. (R. 177).

Additionally, progress notes of John Ruggiao, MD, FACP dated September 19, 2006 reported that Plaintiff had no chest pain, no back pain, and no swelling in legs or joints, but had some foot pain over metatarsal regions bilaterally. (R 209).

A bilateral foot x-ray of September 22, 2006 noted osteoarthritis changes, bilateral valgus deformities and multiple old appearing fractures. (R. 185).   Plaintiff underwent a procedure on her fourth toe, right foot on November 11, 2006. (R. 190-197).   In a preoperative medical evaluation, Robert Iannacone, D.P.M. reported that Plaintiff was in no acute distress with no other pain reported. Her only medications were reported to be Crestor and Prevacid. The surgery went smoothly. There were four follow-up visits over the next month.   According to the physician's records, she was healing normally and was returning to normal everyday activity. (R. 186-89).

At approximately the same time, in November 2006 she had an abnormal left breast mammogram categorized as suspicious. (R. 178-183).   At that time, her weight was stable, and she was reported as being physically very active, with no musculoskelatal complaints.   (R. 200). A biopsy was taken on January 3, 2007 and it revealed benign breast tissue with fat necrosis. (R. 197-207).

II.

Generally, a claimant is considered disabled under the Social Security Act only if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. §423(d)(1)(A).   A plaintiff will not be considered disabled unless she cannot perform her previous work and is unable, in light of her age, education, and work experience, to engage in any other form of substantial gainful activity existing in the national economy.   *Id.* at §423(d)(2)(A).   *See Sykes v. Apfel*, 228 F.3d. 259, 262 (3d Cir. 2000); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).   The Act requires an individualized determination of each plaintiff's

disability based on evidence adduced at a hearing.  *Sykes*, 228 F.3d at 263 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)); *see* 42 U.S.C. §405(b).

The Social Security Administration has developed a five-step process set forth in the Code of Federal Regulations for evaluating the legitimacy of a plaintiff's disability.  20 C.F.R. §404.1520. In this case, the ALJ denied benefits because the Plaintiff failed to establish the required proof at Step 2.  That is, if the claimant is not working, he must establish that he suffered from a severe impairment during the Period of Disability. (20 C.F.R. §404.1520(c)).  In this case, since Plaintiff failed to demonstrate a severe impairment during the Period of Disability, the Administrative Law Judge (ALJ) denied disability benefits.  Id.   The Plaintiff bears the burden of proof at Step two. *Sykes*, 228 F.3d at 263.

Review of the Commissioner's final decision is limited to determining whether the findings and decision are supported by substantial evidence in the record.  *See Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *see* 42 U.S.C. §405(g). The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. S 405(g); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft*, 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted)); *see Richardson v. Perales*, 402 U.S. 389, 401 (1971).   Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla. *Richardson*, 402 U.S. at 401; *Morales*, 225 F.3d at 316; *Plummer*, 186 F.3d at 422.  The reviewing court must view the evidence in its totality.  *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.   Nor is evidence substantial if it is

> overwhelmed by other evidence - - particularly certain types of
> evidence (e.g., that offered by treating physicians) - - or if it really
> constitutes not evidence but mere conclusion.

*Morales*, 225 F.3d at 316 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)); *Benton v.*

*Bowen*, 820 F.2d 85, 88 (3d Cir. 1987).  A reviewing court will not set a Commissioner's decision

aside even if it "would have decided the factual inquiry differently."  *Hartranft*, 181 F.3d at 360.

But despite the deference due the Commissioner, "appellate courts retain a responsibility to

scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not

supported by substantial evidence." *Morales*, 225 F.3d at 316 (quoting *Smith v. Califano*, 637 F.2d

968, 970 (3d Cir. 1981)).

Title II of the Social Security Act (42 U.S.C. §401, *et seq.* requires that the claimant provide

objective medical evidence to substantiate and prove his or her claim of disability.  *See,* 42 U.S.C.

§(d)(5)(a).   Therefore, claimant must prove that his or her impairment is medically determinable;

and cannot be deemed disabled merely by subjective complaints such as pain.  A claimant's

symptoms "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found

to affect . . . .[one's] ability to do basic work activities unless 'medical signs' or laboratory findings

show that a medically determinable impairment(s) is present."  20 C.F.R. §404.1529(b).  *See*

*Hartranft*, 181 F.3d at 362.

As noted above, the ALJ's analysis stops at step two of the five step process. The ALJ made

the following findings:

1. The claimant met the insured status requirements of the Social Security Act for the Period of Disability.

2. The claimant did not engage in substantial gainful activity during the Period of Disability.

3.      Through the date last insured (December 12, 2002), the claimant had the following medically determinable impairments: bone spur in her foot and degenerative disc disease (20 CFR 404.1520(c)).

4.      During the Period of Disability, the claimant did not have an impairment or combination of impairments that significantly limited her ability to perform basic work related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521).

III.

The Plaintiff argues that the ALJ made numerous errors of law and fact in truncating the five-step process and determining that Plaintiff's medical condition did not even exceed the *de minimis* Step 2 "slightness" threshold for denying "groundless claims."  As noted above, the ALJ found that Plaintiff did not have a severe impairment during the Period of Disability and therefore ceased the sequential evaluation process at Step 2.  The issue of "severity" was addressed by the Third Circuit in another matter.

In *Beasich v Comm'r of Soc Sec.*, 66 Fed. Appx. 419, 2003 WL 21299604, No. 02-3627, Slip Op. at 8 (3d Cir. June 6, 2003). the Court held that "if the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of "severe" is met and the sequential evaluation process should continue."  *McDonald v Sec'y of Health & Human Servs.* 795 F2d 1118, 1124 (1st Cir. 1986)). In addition, the Court ruled that "[r]easonable doubts on severity are to be resolved in favor of the claimant." *Id*.

Under SSR 85-28 a medically determinable impairment "is not severe if it does not significantly limit an individual's physical or mental capacity to perform basic work-related functions." As explained in the Administrative Code (20 CFR, §§ 404.1520, 404.1521, 416.920(c), and 416.921), at the second step of sequential evaluation it must be determined whether medical

evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any significant gainful activity. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered.

The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs. Examples of these are walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.  20 CFR §404.1521 (b)(1)-(6).

A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about their limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medial evaluation process itself. Great care should be exercised in applying the not severe impairment concept.  Step two inquiry is "screening device to dispose of groundless claims" and that "[r]easonable doubts on severity are to be resolved in favor of the claimant." *Newell v Commissioner*, 347 F.3d 541 (3d Cir. Oct. 14, 2003)

In this case, the ALJ properly limited his inquiry to the Period of Disability (as defined in footnote 1). The record is void of any objective medical evidence of severe impairment during that time period.  Plaintiff's most significant ailment was foot surgery for a bone spur in 2001.  Upon request of Commissioner in 2006, the treating physician was asked to advise of the extent of

Plaintiff's disability in 2001.   The surgeon could not formulate an opinion. (R. 170-75).

The Plaintiff also suggests she suffers from back pain.  There is no objective medical test which confirms severe back impairment during the Period of Disability.  Lastly, the Plaintiff contends that she was depressed; however the first clinical confirmation of same was in the report of Dr. Kosovich in 2005, far after the Period of Disability expired. (R. 159).

At Step 2, the Plaintiff has the burden of proof, and there is nothing in the record as a whole which remotely suggests severe impairment during the Period of Disability.

No treating doctor opined during the Period of Disability that Plaintiff was incapable of working.  Plaintiff was administered conservative treatments, and her clinical examination results were largely unremarkable during that time period.  For example, on January 26, 1999, Plaintiff complained of a backache radiating to the leg on the right side but on examination she had no tenderness in the back and a negative straight leg raising test. (R. 148). The doctor prescribed Naprosyn and Prilosec.  The next month, Plaintiff presented with persistent back pain although there were no objective findings. (R. 147). She was given non-steroidal anti-inflammatory drugs to relieve the pain – nothing extraordinary. On August 14, 2000, Plaintiff complained of epigastric pain, and an ultrasound of the abdomen confirmed a single small gallstone - a common ailment which usually is resolved within weeks.  Plaintiff has provided no evidence of depression as a severe impairment during the relevant Period of Disability. The first medical evidence of any psychiatric treatment is August 2005. (R. 159). It is true that Dr. Dushan stated that "she was not able to work since 1993" due to the psychiatric condition, however, this appears to be the doctor's impression rather than a professional opinion.  (R. 159). This report stands in contradiction to the reports of Dr. Ibrahim dated February 19, 2005, and March 11, 2005, wherein he finds Plaintiff has no anxiety, agitation or depressed affect. (R. 130, 134). Although the ALJ did not specifically address Dr. Dushan's remark,

it can be given little weight. It is speculative to conjecture the status of Plaintiff's mental state twelve years earlier without the benefit of any medical records to support such a finding.

The ALJ considered all of the medical evidence of Plaintiff's impairment, but reasonably concluded that she did not have a severe impairment in that the symptomatology did not limit Plaintiff's ability to perform work related activities during the Period of Disability.

Secondly, Plaintiff argues that the ALJ failed to properly consider SSR 83-20 governing onset issues in evaluating the Plaintiff's disability claim. It provides some specific examples of onset date issues in specific types of cases (for example, in cases of malignancy or mental health impairments). In addition, SSR 83-20 provides that for slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. *Id*. In such cases, it will be necessary to infer the onset date from the medical and other evidence. The Plaintiff's theory is that her present problems relate back to the Period of Disability. Under SSR 83-20, the ALJ may reasonably infer the onset date from the medical evidence and make an informed judgment based on the facts. Often, the ALJ shall call on a medical advisor to determine on onset date. In this case, the ALJ requested that the foot surgeon from Plaintiff's 2001 operation to provide an opinion as to Plaintiff's disability at that time. Dr. Guardara responded that he could not determine same. There is no evidence of severe impairment during the Period of Disability. Plaintiff had at best common maladies and relatively conservative treatment during the Period of Disability.

The final determination of the Commissioner of Social Security is affirmed. The Complaint is dismissed with prejudice.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

September 26, 2008